**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

MALCOLM U. HARRIS,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Petitioner,⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Case No. 4:22 CV 162 RWS
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
PAUL BLAIR,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Respondent.⠀⠀)

## MEMORANDUM AND ORDER

This case is before the Court on the petition of Malcolm U. Harris for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In September of 2017, petitioner was convicted by a jury of second degree murder (Count I), armed criminal action (Count II), unlawful possession of a firearm by a felon (Count III), and tampering with physical evidence (Count IV).  ECF 6-1 at 148-51.

The trial court sentenced petitioner as a prior and persistent offender to life imprisonment for Count I, 30 years for Count II, 7 years for Count III, and 4 years for Count IV, to be served consecutively for an aggregate sentence of life plus forty-one years in prison.  ECF 6-1 at 162-65.

Petitioner appealed his conviction to the Missouri Court of Appeals, raising one ground for relief: the trial court abused its discretion in denying his motion for a new trial because the State failed to disclose the fact that Hunt was deliberately

placed in a cell with Smith in order to "get him to flip," in violation of his rights to due process, a fair trial, confrontation, and to present a defense.  ECF 6-4.  The appellate court denied relief and affirmed his conviction on December 18, 2018.  *Id.*  The Missouri Supreme Court denied transfer on April 2, 2019, and the mandate issued on April 8, 2019.  ECF 6-5, 6-4.

Petitioner filed a motion for post-conviction relief under Missouri Supreme Court Rule 29.15 on June 7, 2019, which was timely amended by appointed counsel.  *See* ECF 6-8.  The motion court denied relief without an evidentiary hearing on March 31, 2020.  *Id.*  Petitioner appealed, raising only one ground for relief: the motion court erred in denying his Rule 29.15 motion that trial counsel provided ineffective assistance by failing to challenge the trial court's application of the alibi defense rule.  *Id.*  The Missouri Court of Appeals affirmed the denial of post-conviction relief on March 30, 2021.  *Id.* The mandate issued on April 22, 2021.  *Id.*

Petitioner timely filed the instant petition on February 10, 2022, raising three grounds for relief.  ECF 1.

I will deny petitioner's petition for writ of habeas corpus for the following reasons.

## **Background Facts**

On direct appeal, the Missouri Court of Appeals summarized the facts as

follows:

> At approximately 12:00 a.m. on May 14, 2016, Rodney Smith ("Smith"), Domorlo McCaster ("Victim"), and Defendant picked up Terrell Hunt ("Hunt") in a gold Envoy from Hunt's sister's home in Cape Girardeau. Smith sat in the driver's seat, Hunt sat in the rear passenger seat behind Smith, Victim sat in the front passenger seat, and Defendant sat behind Victim. For several hours, the group drove around town ingesting drugs and alcohol. After daybreak, Smith backed the Envoy into his mother's driveway. At that point, and without provocation, Defendant pointed a handgun over the right side of the seat in front of him, toward Victim, and shot Victim in the back of the head, killing him. Hunt fled from the Envoy to his sister's house, and Smith jumped out of the vehicle before looking back inside to see Victim slumped over the middle console and Defendant outside holding a P89 Ruger handgun. Neither Hunt nor Smith called 911. Defendant instructed Smith to "get rid of the gun," and Smith placed the weapon on the side of his mother's home. Smith then decided that he needed to get Victim's body out of the vehicle, so he and Defendant drove to a nearby park about two blocks away.  While Defendant watched, Smith removed Victim's body from the vehicle, dragged Victim into the woods, and left him there.
>
> Smith and Defendant then drove to Defendant's girlfriend's house where Smith and his girlfriend began to clean the Envoy. When they finished, Defendant's and Smith's girlfriends transported the Envoy to Illinois, per Defendant's instruction to "[g]et rid of the truck;" the Envoy was then moved to Tennessee several days later. During this time, Smith retrieved the firearm from the side of his mother's house and threw it into a river. Several days thereafter, Smith learned that the police had found Victim's body, and he relayed this information to Defendant, who told Smith to burn the Envoy. Smith and his girlfriend moved the Envoy once more, to another location in Tennessee, but decided not to burn it and to tell Defendant that they had in case Defendant was "trying to set [them] up…to take the fall."

The police met with Hunt on May 20; May 23; and May 26, 2016; and with Smith on May 24, 2016 to discuss the incident. On May 20 and May 23, Hunt told the police that he knew nothing about what had happened to Victim. On May 24, Smith also initially stated that he had no information about Victim, but when informed that the police had learned of the whereabouts of the Envoy, Smith acknowledged his involvement and was placed in a jail cell. On May 26, after learning that Smith had provided information to the police, Hunt likewise decided to provide his explanation of the events.

Hunt was arrested for hindering prosecution and placed in a jail cell three or four spaces from Smith's. They were transferred to the same cell, however, after Smith asked for Hunt to be placed with him. Therein, Smith told Hunt that he had explained to the police what had happened, and Hunt decided to provide a handwritten statement, which began, "I, [Hunt], on behalf of myself and [Victim] and [Smith]," and stated Hunt's account of the events implicating Defendant.

On August 18, 2016, Defendant was charged by information, subsequently amended on August 25, 2017, with first degree murder, armed criminal action, unlawful possession of a firearm by a felon, and tampering with physical evidence. At trial, which commenced on September 12, 2017, Hunt testified that while in the Envoy, he looked over just as Defendant pointed the firearm at Victim and observed Defendant shoot Victim. Hunt testified that he fled because he believed he "could be next." During cross-examination, Defendant's counsel ("Counsel") asked Hunt about his failure to call 911, and he explained that he "was shocked" and "didn't want to be involved with this because…[he had] nothing to do with nothing." When challenged about his failure, for several days, to tell the police what had happened, Hunt testified that he "was still…shocked" and "raised up different from that." Hunt noted that he initially "lie[d] because [he] didn't want to tell [the police]" and "would still be quiet to this goddamn day" if Smith had not spoken to them. Hunt testified that he was transferred to Smith's cell after Smith requested that they be cellmates. Hunt testified that therein, Smith explained that he "told [the police] everything," and that after hearing this, Hunt decided to "go ahead and tell [his] side because [he had] nothing to do with it." Hunt agreed that he did not want to be charged with anything and that he wrote his statement after he was moved to Smith's cell,

but he noted that he did not speak with Smith about composing a written statement.

Smith, in turn, testified that, after hearing a gunshot, he jumped out of the Envoy before looking back inside to see Victim slumped over the middle console and Defendant standing outside the vehicle holding a P89 Ruger handgun. Smith testified that he complied with Defendant's instructions to move the Envoy and to "get rid of the gun" and that he "didn't want to be like [Victim]" and "end up dead." Smith testified that he did not call the police after Victim's death because "[g]rowing up where [he is] from you don't call the police." Smith testified that he did not know why he was initially untruthful with police, but affirmed that after he was confronted with information about the Envoy, he was truthful. During cross-examination, Counsel asked whether Smith had lied to the police, and Smith answered that he did "[a]t first," agreeing that he was "try[ing] to get [himself] out of trouble." Smith testified that after being placed in a jail cell, he asked for Hunt to be transferred into it to be his cellmate, and when he was, Smith "told him [to] tell the truth." When Counsel asked whether Smith had "any proof that that's what happened" or whether "[w]e just got to trust you," Smith answered, "Yep."

During closing argument, Counsel stated the following:

[W]e know it was admitted by [Hunt] and [Smith] that they got together in the Cape Girardeau City Jail and that was only after [Smith] had come in and been confronted with a challenge to the lies … And he apparently asked for [Hunt] to be put into his cell. Well [Hunt] comes in there and he's lied for about the fourth time…He talks to [Smith]. What happens next? He says, I want to make a statement…In the years I've been doing this, I've learned…you always keep suspects separated. You don't let them get together. Well, what happened here these two got together and what does [Hunt] come out with when he decides to write a statement and tell his story? I, [Hunt], on behalf of myself, [Victim], and [Smith]. You think they talked about getting their story together? I don't think there's any question that's what they did. Then he comes out and writes a statement implicating [Defendant].

On September 14, 2017, the jury found Defendant guilty of second degree murder, armed criminal action, unlawful possession of a firearm by a felon, and tampering with physical evidence.

ECF 6-4.

## Discussion

In his petition for habeas corpus, petitioner asserts the following three grounds for relief:

(1) he was entitled to a hearing on his 29.15 post-conviction motion;

2) he was provided ineffective assistance of trial counsel; and

3) his waiver of his right to testify was not knowing and voluntary.

### Noncognizable Claim: Ground 1

In Ground 1 of his petition, petitioner alleges that he was entitled to an evidentiary hearing on his 29.15 post-conviction motion.  Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A state court's decision not to grant an evidentiary hearing on a post-conviction motion is not a cognizable federal claim as such a determination is a matter of state law.  It is well-established that "federal habeas corpus relief does not lie for errors of state law" and that "it is not the province of a federal habeas

court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (cleaned up). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68; s*ee also Lee v. Norris*, 354 F.3d 846, 847 (8th Cir. 2004) ("A mere violation of state law is not cognizable in federal habeas.") (cleaned up); *Bell-Bey v. Roper,* 499 F.3d 752, 756 (8th Cir. 2007) ("Because the Constitution does not guarantee the existence of state post-conviction proceedings, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas application.") (cleaned up); *Powell v. Morriss*, No. 4:15CV997 NCC, 2018 WL 3427852 at *2 (E.D. Mo. Jul. 16, 2018) (state court's failure to grant evidentiary hearing on post-conviction motion is at most a violation of state law and is non-cognizable on federal habeas review."); *Stewart v. Stange*, 1:20CV255 SRW, 2021 WL 1698951, at *5 (E.D. Mo. April 29, 2021) (same); *Coleman v. Redington*, 4:18CV1750 RLW, 2022 WL 225656, at *5 (E.D. Mo. Jan. 26, 2022) (same).

Ground 1 of petitioner's § 2254 petition is denied.

<u>Claim Decided on the Merits: Ground 2</u>

In Ground 2, petitioner alleges that trial counsel was ineffective for failing to challenge the trial court's application of the alibi defense rule. ECF 1 at 5. Specifically, petitioner argues that trial counsel was ineffective for failing to

provide the trial court with favorable case law and to seek reconsideration of the trial court's application of Missouri's alibi defense rule.  *Id*.  This claim was properly presented to the motion and appellate courts on post-conviction review and will be reviewed on the merits.

When reviewing a claim on the merits, federal habeas relief can be granted only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); *see Williams v. Taylor*, 529 U.S. 362, 379 (2000).  The federal law must be clearly established at the time petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court.  *Id.* at 380–83.

"A state court's decision is 'contrary to' clearly established Supreme Court precedent when it is opposite to the Supreme Court's conclusion on a question of law or different than the Supreme Court's conclusion on a set of materially indistinguishable facts."  *Carter v. Kemna*, 255 F.3d 589, 591 (8th Cir. 2001) (citing *Williams,* 529 U.S. at 412–13).  "A federal court may grant relief under the 'unreasonable application' clause if the state court correctly identified the governing legal principle, but unreasonably applied it to the facts of the particular

case." *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011) (citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  "A state court's application of clearly established federal law must be objectively unreasonable, and not merely incorrect, to warrant the granting of a writ of habeas corpus."  *Id.* (citing *Bell*, 535 U.S. at 694).

Finally, when reviewing whether a state court decision involves an "unreasonable determination of the facts" in light of the evidence presented in the state court proceedings, state court findings of basic, primary, or historical facts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Collier v. Norris*, 485 F.3d 415, 423 (8th Cir. 2007).  "[E]ven erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'"  *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001).

The federal court is "bound by the AEDPA to exercise only limited and deferential review of underlying State court decisions."  *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003).  To obtain habeas relief from a federal court, the petitioner must show that the challenged state court ruling "rested on an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (cleaned up).  This standard is difficult to meet.  *Id.* at 357-58.

The Missouri Court of Appeals denied this claim on appeal from the denial of post-conviction relief as follows:

> During discovery in the underlying prosecution, the State filed its request for production, stating that "[i]f the defendant intends to rely on the defense of alibi, please announce such intent and give specific information as to the place at which the accused defendant claims to have been at the time of the alleged offense, and, as particularly as is known, the names and addresses of the witnesses by whom they propose to establish such an alibi."
>
> On August 16, 2017, Harris filed his response, claiming "the request by the State is not sufficient as to place, date and time that he can reasonably respond to the State's request. Other than that, the defendant can state that he was not present when Domorlo McCaster was murdered." That same day, the State filed a request pursuant to Rule 25.05(5) to compel Harris to announce whether he intended to rely on an alibi defense and if so to disclose his whereabouts at the time of the murder and any witnesses Harris intended to rely on in that regard.
>
> The next day at the pretrial conference, the court heard argument on the matter including whether and to what extent a defendant's testimony constituted an alibi and therefore was subject to the alibi-defense rule. The transcript demonstrates the parties and the court were unclear what testimony triggers the disclosure obligation under the alibi defense rule. The court sustained the State's motion and required Harris to file a written disclosure if he intended to rely on an alibi defense.
>
> Harris's counsel voiced his objection to the ruling because it required Harris to disclose his location even if he were to merely deny his presence at the crime which would fall short of a true alibi defense. The trial court rejected this but invited counsel to provide the court caselaw in support of this assertion. Counsel also objected to the State's request as being over-broad as to time because the State alleged the murder occurred between 9 p.m. and noon the next day. The court agreed with this argument and ordered Harris to provide his whereabouts during the window of time the witnesses stated the murder took place.

In accordance with the court's order, on August 24, 2017, Harris filed his supplemental response to the State's motion to produce stating "that within the time frame specified by the State, to-wit, May 14, 2016 from the hours of 4:45 a.m. to 6:35 a.m., in the event the defendant testifies, he will testify that he was at the residence of Clarissa Simpson on Montgomery Street in Cape Girardeau, Missouri. At this time, defendant is the only person who might testify to his whereabouts at that location during that period of time." The State did not seek sanctions to exclude Harris's testimony nor file any additional motion on the matter.

To be entitled to post-conviction relief for ineffective assistance of trial counsel, the movant must show by a preponderance of the evidence that his or her trial counsel failed to meet the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Johnson*, 406 S.W.3d at 898. First, the movant must show that his counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would exercise in a similar situation. *Id.* at 898-899. To satisfy this prong of the test, a Rule 29.15 movant must overcome a strong presumption that counsel's conduct was reasonable and effective. *Id.* at 899. The second prong requires the movant to show that he was prejudiced by trial counsel's failure. *Id.* To satisfy the prejudice prong, the movant must demonstrate that, absent the claimed errors, there is a reasonable probability that the outcome would have been different. *Id.*

<u>Discussion</u>

## A. Harris failed to establish that he suffered prejudice.

In his sole point on appeal, Harris asserts the motion court erred in denying his Rule 29.15 motion that trial counsel provided ineffective assistance by failing to challenge the trial court's application of the alibi defense rule. Harris asserts the trial court misunderstood and therefore misapplied the alibi defense rule by conflating a simple denial of his presence at the crime scene with him invoking an alibi defense. And Harris argues his trial counsel was ineffective for failing to provide the trial court with the favorable case law that was available and which the court requested and for failing to ask the court to revisit and reconsider its erroneous application of the alibi defense rule.

11

The alibi defense rule refers to a subsection of Supreme Court Rule 25.05 which governs a defendant's disclosures in a criminal case. The rule provides:

(5) If defendant intends to rely on the defense of alibi and the state in its request specifies the place, date, and time of the crime charged, disclosure shall be in the form of a written statement by counsel for defendant, announcing defendant's intent and giving specific information as to the place at which defendant claims to have been at the time of the alleged offense, and as particularly as is known, the names and addresses of the witnesses by whom defendant proposes to establish the alibi.

Mo. Sup. Ct. R. 25.05(5). Failure to comply with the alibi defense rule may warrant sanctions, including the exclusion of a defendant's testimony as to his whereabouts.

"The difference between an alibi and a mere denial may be a fine line in certain cases." *State v. Anderson*, 18 S.W.3d 11, 16 (Mo. App. W.D. 2000). "An alibi is additional substantive evidence, above and beyond the accused's bare denial of guilt, relying for its weight on the credibility of other persons, or on circumstantial evidence, designed to establish that defendant could not have committed the offense in question." *State v. Williamson*, 877 S.W.2d 258, 261 (Mo. App. W.D. 1994). "A statement by the accused that he was not at the scene of the crime is functionally more of a denial than an alibi, even if the accused, when asked to account for his whereabouts, states that he assumes he was at home at the time in question." *Anderson*, 18 S.W.3d at 16.

It is apparent that the trial court and counsel misunderstood the alibi defense rule. Proper application of the rule here would have required Harris to disclose prior to trial his whereabouts at the time of the murder, *only if* he planned to testify that he was somewhere else, and even then, the trial court is granted discretion to discern whether the statement is functionally more of an alibi or more of a denial. *Anderson*, 18 S.W.3d at 16. However, the alibi defense rule is not applicable and therefore never requires a defendant provide his whereabouts at the time of a crime if he plans to merely deny his presence at the scene. *Id.* A fine line separates these two things. But, our laws only require disclosures of the former and protect a defendant's right to pursue the latter. Rule 25.05.

12

While the trial court incorrectly stated that the alibi defense rule and its mandatory disclosure requirement applies even when the defendant intended to simply deny his presence at the murder scene, Harris has failed to establish that he suffered prejudice as a result. First, the trial court's ruling was made on a motion to compel discovery, and trial counsel complied with the ruling. Therefore, no motion for sanctions to limit Harris's testimony was ever filed by the prosecution, and the court never excluded or limited Harris's testimony. Further, by complying with the ruling, trial counsel preserved both Harris's ability to deny his presence and to present his alibi defense. Harris had the right to testify, deny his involvement, and present an alibi defense, but Harris simply chose not to testify.

## Conclusion

Therefore, Harris is unable to satisfy the second prong of the *Strickland* analysis, as his testimony was not limited or excluded. Having suffered no prejudice, Harris's claim is denied.

ECF 6-8 (cleaned up). In rejecting this claim, the Missouri Court of Appeals

further held as follows:

We are likewise unpersuaded by Harris's argument stemming from the trial court's utterance of the word "correct," in response to the question whether corroborating witness testimony would be required in order to permit Harris to testify as to his whereabouts at the time of the murder. Harris argues that his trial counsel was ineffective for failing to challenge this legally incorrect statement because it led to his unknowing waiver of the right to testify. Harris makes much ado about nothing, however, because the record demonstrates that the trial court's utterance was a mere inadvertent misstatement in light of the other statements in the record by the court and Harris's counsel himself that the court was imposing no such corroboration witness requirement.

*Id.* at 6 n.3.

13

Ineffective assistance of trial counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* established a two-prong test to determine when counsel's ineffective performance violates the Sixth Amendment. On the first prong, petitioner "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The second prong requires petitioner to "show that the deficient performance prejudiced the defense." *Id.* To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In applying *Strickland*'s two prongs, the Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," *id.* at 689, and that reviewing courts should indulge a strong presumption that counsel's actions fell within the "wide range of professionally competent assistance." *Id.* at 690. "Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)). This means that petitioner must do more than "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002) (cleaned

14

up).  "Rather, he must show that the [Missouri Court of Appeals] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

The Missouri Court of Appeal's decision is not an unreasonable application of *Strickland* or an unreasonable determination of the facts.  Here, the Missouri Court of Appeals reasonably concluded that petitioner failed to show any resulting prejudice because trial counsel's decision preserved both petitioner's ability to deny his presence at the murder scene and to present his alibi defense.  Because the court need not address both components of *Strickland* if petitioner makes an insufficient showing on one of the prongs, *Engelen v. United States,* 68 F.3d 238, 241 (8th Cir. 1995), the Missouri Court of Appeals reasonably concluded that petitioner was entitled to no relief on his ineffective assistance of counsel claim for failure to demonstrate prejudice.  Petitioner had the right to testify, deny his involvement, and present an alibi defense, but he chose not to testify, and he therefore failed to demonstrate that he was prejudiced by any alleged error of counsel.

For these reasons, the Missouri Court of Appeal's decision to deny relief on petitioner's ineffective assistance of counsel claim is entitled to deference, and Ground 2 of petitioner's habeas petition is denied.

<u>Procedurally Defaulted Claim: Ground 3</u>

In Ground 3, petitioner alleges that his waiver of his right to testify was unknowing and involuntary. State prisoners must fairly present all claims to the state courts. When a prisoner has gone through all stages of direct appeal and post-conviction proceedings without presenting a claim to the state courts, that claim is procedurally defaulted. *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997). Here, respondent argues that petitioner procedurally defaulted Ground 3 by failing to present it properly to the Missouri courts. If true, this Court may not consider the claim unless petitioner can meet one of the two exceptions to procedural default.

To qualify for the first exception, petitioner must show cause and prejudice. To demonstrate cause, he must show that "some objective factor external to the defense" impeded his efforts to present the claim to the state courts. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, petitioner must demonstrate that the identified errors "worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). The second exception requires petitioner to show that failure to consider the defaulted claims will result in a fundamental miscarriage of justice. To meet this standard, he must present new evidence that "affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006).

16

It is "the settled law of this Circuit that a habeas petitioner must have raised both the factual and legal bases for each claim in the state courts in order to preserve the claim for federal review." *King v. Kemna,* 266 F.3d 816, 821 (8th Cir. 2001) (cleaned up).

In Ground 3, petitioner argues that the waiver of his right to testify was unknowing and involuntary because "trial counsel's failure to revisit the court's ruling [regarding alibi] led Mr. Harris to choose not to testify. . . ." ECF 1 at 5. To the extent petitioner is attempting to challenge the validity of his waiver directly, the claim is procedurally defaulted because it was not raised on direct appeal. Because the factual and legal basis for this claim was not presented to the Missouri Court of Appeals on direct appeal, this Court may not consider it unless petitioner can establish one of the exceptions to procedural default. As petitioner makes no attempt in either his petition or traverse to avoid the procedural default of this claim, this Court is barred from considering it.

Even if this claim were not procedurally defaulted, it is meritless. "A defendant in a criminal case has the right to take the witness stand and to testify in his own defense." *Rock v. Arkansas*, 483 U.S. 44, 49 (1987) (cleaned up). The defendant has the ultimate authority in deciding whether to testify or not. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). "Because the right to testify is a fundamental constitutional guarantee, only the defendant is empowered to waive the right."

17

*Frey v. Schuetzle*, 151 F.3d 893, 898 (8th Cir. 1998).  The waiver of this right must be made voluntarily and knowingly. *Id.*

Here, the state court record conclusively refutes petitioner's claim that his waiver was not knowing and voluntary.  At trial, the state court engaged in the following colloquy with petitioner on the record regarding his right to testify:

> The Court: Mr. Harris, you understand that you have a right to testify in this case if you want to?
>
> Defendant: Yes, sir.
>
> Court: And you have a right in this case not to testify if you choose to. Do you understand that?
>
> Defendant: Yes, sir.
>
> Court: You have a right to talk to your attorney about the decision whether you want to testify in this case or whether you choose not to testify in this case. Do you understand that?
>
> Defendant: Yes, sir.
>
> Court: And I don't want to know what's passed between you and Mr. Wilson, but have you had an opportunity to talk to him about whether or not you should testify in this case?
>
> Defendant: Yes, sir.
>
> Court: And you need to understand that decision-- while Mr. Wilson can give you his opinion about what you ought to do or what you ought not to do, the decision about whether you testify is your decision. It's not Mr. Wilson's decision. Do you understand that?
>
> Defendant: Yes, sir.

ECF 6-9 at 517–18.  After further questioning regarding his understanding of his right to testify or not to testify, petitioner definitively stated "I'm not going to testify."  *Id.* at 519.  After the prosecution concluded its presentation of evidence to the jury, the trial court asked if the defense wished to put on any evidence.  Petitioner's trial counsel responded: "We have no testimony to offer, Judge."  *Id.* at 538 (cleaned up).  Petitioner did not object, or in any way indicate to the trial court that he wished to testify in spite of trial counsel's statement.  *Id.*  Through his affirmative representation to the Court and his subsequent silence, petitioner knowingly and voluntarily waived his right to testify.

To the extent that Ground 3 can be read to allege that ineffective assistance of counsel led to his involuntary and unknowing waiver of his right to testify, that claim is also procedurally defaulted.  The post-conviction motion court addressed this issue in petitioner's original 29.15 motion.  ECF 6-1 at 259–61.  The motion court denied the claim, noting that it was "directly refuted by the record" and that it "satisfied its obligation to inquire as to Movant's understanding of his right to testify."  *Id.* at 260.  However, this issue was not raised in the appeal of the denial of post-conviction relief and is therefore procedurally defaulted.  Because the factual and legal basis for this claim was not presented to the Missouri Court of Appeals on direct appeal, this Court may not consider it unless petitioner can establish one of the exceptions to procedural default.  As petitioner makes no

attempt in either his petition or traverse to avoid the procedural default of this claim, this Court is barred from considering it.

Even if it were not procedurally defaulted, this claim is denied as meritless. In denying post-conviction relief on a different ineffective assistance of counsel claim, the Missouri Court of Appeals held that petitioner "had the right to testify, but simply chose not to."   ECF 6-8 at 9 (cleaned up).  The appellate court found as follows:

> Additionally, on the third day of trial, the trial court informed Harris of his right to testify or not testify. The court elaborated that in the event Harris decided not to testify the court would instruct the jury that the decision not to testify could not be considered evidence of his guilt. Harris acknowledged he had the opportunity to discuss the decision with trial counsel. He also acknowledged his understanding that if he chose to testify, he would be subject to cross examination and the prosecution could question him about his prior conviction to impeach his credibility. He acknowledged the decision not to testify was his and his alone.

*Id.* at 9 n.5.  This factual finding is presumed correct and entitled to deference from this Court.  28 U.S.C. § 2254(e)(1).

For these reasons, Ground 3 of petitioner's § 2254 petition is denied.

## Certificate of Appealability

When a petitioner is denied a writ of habeas corpus under 28 U.S.C. § 2254, the petitioner may not appeal unless granted a certificate of appealability.  28 U.S.C. § 2253(c)(1)(A).  To be entitled to a certificate of appealability, the

petitioner must make a substantial showing of the denial of a constitutional right. § 2253(c)(2); *see Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).  A showing is substantial when the issues raised are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings.  *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).  Because petitioner has not met this standard on any claims raised in the petition, the Court will deny a certificate of appealability on all claims.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Malcolm Harris for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [1] is denied.

**IT IS FURTHER ORDERED** that the petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not grant a certificate of appealability.

A separate judgment in accordance with the Memorandum and Order is entered this same date.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 26th day of March, 2025.

21